Andrew B. Altenburg, Jr., U.S. BANKRUPTCY JUDGE
Dear Counsel:
The debtor filed an Amended Complaint seeking an order setting aside a foreclosure sale under section 548(a) of the Bankruptcy Code on the grounds that the sale was constructively fraudulent and/or under state law because the debtor lacked notice of the adjourned sale. Doc. No. 17. Before the court[1] now is the Motion to Dismiss the Amended Complaint[2] filed by HSBC Bank USA, NA ("HSBC"). Doc. No. 22. This court finds that the Amended Complaint should be dismissed.
*289 The matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). The court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.
As the matter before the court is a Motion to Dismiss, the court considers the facts in the light most favorable to the debtor. On July 18, 2017, the sheriff of Essex County sold property located at 69-71 Stockman Place, Irvington, New Jersey (the "Property"), to 69-71 Stockman Place LLC (the "LLC") for $ 143,000. Doc. No. 17, ¶ 8. More than 10 days later, on August 14, 2017, the debtor filed a motion with the New Jersey Superior Court to set aside the sale as defective because she did not receive notice of the sale. Doc. No. 17, ¶ 7. The sheriff's deed has not yet been transferred. Doc. No. 17, ¶ 7.
On September 8, 2017, the debtor filed the instant chapter 11 case. On April 10, 2018, she commenced this adversary proceeding, and on February 1, 2019 she filed the Amended Complaint. Doc. No. 17. The debtor alleged that "Before the purported, but invalid, Sheriff's sale of the Property occurred, the Debtor was prepared to commence a bankruptcy proceeding to stay the purported Sheriff's sale from proceeding. Before, at and after the occurrence of the purported, but invalid, Sheriff's sale of the Property, the Debtor was also prepared to obtain a satisfaction of the mortgage that relates to the foreclosure action with respect to the Property." Id. , ¶ 14. She also stated that between filing of this bankruptcy case and the adversary proceeding, she made substantial improvements to the Property, which contains four residential apartment units. Id. , ¶ 15.
The debtor argued that "The purported, but invalid, Sheriff's sale of the Property, without notice thereof having been received by the Debtor and without adequate and reasonable notice having been provided to the Debtor by the Bank, constitutes a significant and substantial irregularity in the conduct of the sale, which irregularity was also unduly prejudicial to the Debtor, such that the purported Sheriff's sale of the Property is invalid under applicable New Jersey state law." Id. , ¶ 16. The debtor thus argued that the sale should be avoided as a constructively fraudulent transfer pursuant to 11 U.S.C. § 548(a). Id. , ¶ 18. She alleged that the sale occurred within two years before the filing of her bankruptcy case, she received less than reasonably equivalent value, and she was insolvent or became insolvent as a result of the transfer. Id. , ¶ 17. In addition to avoiding the transfer, the debtor seeks an order from this court requiring HSBC to accept $ 143,000 from the debtor rather than the $ 261,933 plus interest owed under the judgment because that is what it accepted from the LLC in full satisfaction of the mortgage.[3] Id. , ¶ 13.
HSBC filed the instant Motion to Dismiss on February 8, 2019. It stated that *290 the Supreme Court's decision in BFP v. Resolution Trust Corp. , 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), precludes avoidance as a fraudulent transfer so long as the sale was conducted in accordance with New Jersey law. It then argued that the sale was conducted in compliance with New Jersey law as HSBC in fact did provide the debtor with notice of the adjourned sale. It further argued that equity does not support vacating the sale because there was competitive bidding that resulted in a third-party purchaser.[4]
The debtor responded with a letter incorporating her opposition to HSBC's Motion to Dismiss the original complaint as support for the relief she seeks in her Amended Complaint. Doc. No. 23. She also argued that notice of a sheriff's sale must be actual, not constructive. She repeated that "had the Debtor received such notice, the Debtor would have commenced this Chapter 11 case before such purported sale could have proceeded." Id. , p.2.
Motion to dismiss standard
HSBC seeks dismissal of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6),[5] incorporated into adversary proceedings by Federal Rule of Bankruptcy Procedure 7012, for failure to state a claim upon which relief can be granted. Doc. No. 22, ¶ I. In considering a Motion to Dismiss, a court must bear in mind the following:
When reviewing a motion to dismiss ..., courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny , 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 555 [127 S.Ct. 1955, 167 L.Ed.2d 929] (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal , 556 U.S. 662, 678 [129 S.Ct. 1937, 173 L.Ed.2d 868] (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside , 578 F.3d 203, 211 (3d Cir. 2009).
Ogbebor v. J.P. Morgan Chase, N.A. , CV163400FLWDEA, 2017 WL 449596, at *5 (D.N.J. Feb. 2, 2017).
Avoidance of the sale as a fraudulent transfer
This court will first address the fraudulent transfer allegation. A party alleging fraudulent transfer under Bankruptcy Code section 548(a)(1)(B) must prove, among other things, that reasonably equivalent value was not obtained in exchange for the property. The Supreme Court in BFP v. Resolution Trust Corp. , 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), held that "Any irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law deprives the sale price of *291 its conclusive force under § 548(a)(2)(A), and the transfer may be avoided if the price received was not reasonably equivalent to the property's actual value at the time of the sale (which we think would be the price that would have been received if the foreclosure sale had proceeded according to law)." Id. , at 545-46, 114 S.Ct. 1757.
Taking the facts in the light most favorable to the debtor, this court finds that the failure to notify the debtor of the adjourned sale was not an irregularity in the sale that resulted in a constructively fraudulent transfer in this case. The BFP Court was concerned with irregularities that hamper the exchange of reasonably equivalent value in exchange for property. "How closely the price received in a forced sale is likely to approximate fair market value depends upon the terms of the forced sale-how quickly it may be made, what sort of public notice must be given, etc." BFP , at 540, 114 S.Ct. 1757.
One of my colleagues explained the reasoning of BFP as follows:
Focusing on the manner in which foreclosed property is sold, the [Supreme] Court canvassed state foreclosure procedures, noting that foreclosure laws, in addition to providing notice to the borrower, typically require publication of a notice of sale, and "strict adherence to prescribed bidding rules and auction procedures." Id. at 542, 114 S.Ct. 1757 .... Presumably, by these comments, the Court was opining that state procedures are designed to solicit prospective purchasers and control auction processes in order to maximize the value achieved at such sales. The Court recognized the difficulty of valuing a property that must be sold within the strictures of state-prescribed foreclosure procedures, noting that "property that must be sold within those strictures is simply worth less. " Id. at 539, 114 S.Ct. 1757 ... (emphasis in original).
Matter of Varquez , 502 B.R. 186, 191-92 (Bankr. D.N.J. 2013).
As will be discussed below, New Jersey's foreclosure laws do not require notice to the borrower of adjournments. Thus, the state's foreclosure laws were complied with here. But more importantly, the debtor has not proffered any authority for the proposition that a sale made without notice to her caused the sale price to fall below reasonably equivalent value. The court in In re Ryker , 301 B.R. 156 (D.N.J. 2003), considered whether a "defect in the Notice of Sale was of such a magnitude that it chilled competitive bidding, thwarted the purpose of foreclosure sales in New Jersey, and, as a result, violated New Jersey foreclosure law." Id. , at 166. In Ryker , the issue was whether potential bidders had sufficient notice of a reduced amount to satisfy the foreclosure judgment. Here, the debtor acknowledges that a third party purchased the property, thus there was some competitive bidding as opposed to HSBC purchasing the property. She does not allege that, had she had notice, she would have bid more than the LLC did. Rather, she alleges that she would have attempted to further adjourn the sale and then file bankruptcy.
Additionally, the debtor did not allege a value of the property that exceeds $ 143,000 to support that it was sold for less than reasonably equivalent value. Her request to pay $ 143,000 to HSBC suggests that she believes $ 143,000 is the true value, meaning that reasonably equivalent value was exchanged. She also failed to allege facts supporting that she was insolvent or became insolvent as a result of the transfer.
Thus, the debtor failed to state a claim for relief under section 548(a)(1)(B).
*292 Vacate the sheriff's sale on state law equitable grounds [6]
Though neither New Jersey statute nor its Court Rules require re-advertising or re-posting of an adjourned sheriff's sale, see, e.g., N.J.S.A. § 2A:61-5, 61-6; N.J. Court Rules 4:65-2, 65-3, 65-4, both parties here recognize that equity can sometimes support vacating a sale to prevent injustice. "This form of judicial interference is warranted only when necessary to correct a plain injustice; that is to say, where it would be inequitable and unjust not to set aside the sale due to fraud, accident, surprise, mistake or irregularities in the conduct of the sale." In re Ryker , at 167. The court in First Mut. Corp. v. Samojeden , 214 N.J. Super. 122, 518 A.2d 525 (App. Div. 1986), established this principle in a case where it found that lack of notice to the property owner and a junior encumbrancer "deprived [them] not only of the opportunity directly to protect themselves but also of the benefits which competitive bidding at a public sale was intended to provide." Id. , at 127, 518 A.2d 525. Importantly, the New Jersey Superior Court later clarified that "[w]hile we held in Samojeden that fundamental fairness entitles all 'interested parties to actual knowledge of the adjourned date upon which the sale actually takes place,' we did not hold that the absence of such notice requires the court to vacate the sale in every case. " Emigrant Mortgage Co., Inc. v. Genello , A-1297-16T2, 2018 WL 2450556, at *2 (N.J. Super. Ct. App. Div. June 1, 2018) (emphasis added; citing Samojeden at 123, 518 A.2d 525 ). The Emigrant court explained:
"The general rule is that when insufficient notice of a sheriff's sale is given, the preferred remedy is that which restores the status quo ante to the greatest extent possible." New Brunswick Sav. Bank v. Markouski , 123 N.J. 402, 425 [587 A.2d 1265] (1991). The court may void the sale if the party promptly seeks relief, was unaware of the pending sale, and no innocent third parties would be prejudiced. Ibid. (citation omitted).
However, the remedy to void the sale requires "some evidence of actual prejudice to an interested party." G.E. Capital Mortg. Servs., Inc. v. Marilao , 352 N.J. Super. 274, 283 [800 A.2d 150] (App. Div. 2002). The power to void the sale is "discretionary and must be based on considerations of equity and justice."
*293 First Trust Nat'l Ass'n [v. Merola ], 319 N.J. Super. [44] at 49 [724 A.2d 858 (1999) ].
Id. , at *2.
Indeed, whether a court will vacate a sheriff's sale can depend on whether that relief will remedy the situation. For example, "[i]f defendant cannot redeem the property within a reasonable period of time, ... then there is no need to vacate the sheriff's sale and title will remain with plaintiff." U.S. ex rel. U.S. Dep't of Agric. v. Scurry , 193 N.J. 492, 506, 940 A.2d 1164 (2008).
In Emigrant Mortgage Co. , 2018 WL 2450556, the Superior Court affirmed the lower court's denial of a motion to vacate sale where the borrowers had not made any mortgage payments in eight years, the mortgagee had agreed to a six-month forbearance plus three more months if borrowers found a buyer and during which the borrowers only had to make escrow payments. Id. , at *1. When the mortgagee then obtained a foreclosure judgment, the borrowers filed a motion for reconsideration that was denied, followed by an appeal that was denied. Id. When the sheriff's sale was scheduled, the borrowers twice adjourned it, then filed bankruptcy. Id. After the bankruptcy case was dismissed, the mortgagee finally proceeded to sheriff's sale, but did not notify the borrowers of the new date. Id. The borrowers thereafter sought to vacate the sale. Id. The lower court denied that motion but extended the redemption period. Id. The borrowers then appealed the denial of their motion to vacate the sale. In denying the appeal, the Superior Court noted this history and that there was no evidence that the borrowers could have purchased the property at the sale or obtained a loan modification. Id. , at *2. The Superior Court accordingly denied the motion to vacate. Id.
In Ryker , the mortgagee did not re-notice or re-advertise a sale despite the amount due having dropped by nearly $ 170,000. Ryker , 301 B.R. at 159. The mortgagee had been the only bidder at the sale for only $ 100 above the amount owed. Id. The court cited the inequity that the mortgagee received a property with a value exceeding $ 200,000 for roughly $ 50,000. Id. , at 168. The defect in the notice of sale "thwarted competitive bidding and undermined the fundamental purpose of foreclosure sales." Id. It held that the defect "constituted such an irregularity in the conduct of the sale under New Jersey law that it deprived the sales price of its conclusive force under § 548." Id. , at 169.
Here the debtor failed to adequately allege the prejudice to her. She admitted that a third party purchased the property, and she did not allege that she was then prepared to redeem the property or out-bid the LLC. See Indymac Bank, F.S.B. v. Burnett , A-3529-09T3, 2011 WL 1598927, at *4 (N.J. Super. Ct. App. Div. Apr. 29, 2011) ("nothing in the record indicates that a further modification or forbearance agreement was a realistic possibility if defendant had attended the sheriff's sale on March 9, 2009"). Nor has she proffered that her ability to cure, modify or refinance HSBC's loan is greater now than in her prior bankruptcy case that her counsel admitted lasted two years.[7] Instead, the debtor argues that *294 had she known of the sale, she would have exercised her right to adjourn the sale and then filed bankruptcy. Thus, vacating the sale "would put defendant in the same position she would have been in had she had notice." Deutsche Bank Nat'l Tr. Co. on behalf of BCAP, L.L.C. v. Hwang , A-2949-15T2, 2017 WL 2979554, at *2 (N.J. Super. Ct. App. Div. July 13, 2017) (affirming denial of motion to vacate sheriff's sale where court had extended the redemption period, and borrower requested multiple times to stay the sale, thus she had notice of when a sheriff's sale would be scheduled; admitted she could not afford to maintain regular payments; and was not able to redeem the property). That is the position she sat in during her prior bankruptcy case where she was not able to negotiate a solution with HSBC. This court is "mindful of the time-honored maxim[ ] that 'the law does not compel one to do a useless act'[.]" U.S. ex rel. U.S. Dep't of Agric. v. Scurry , 193 N.J. 492, 505-06, 940 A.2d 1164 (2008) (quoting Albert v. Ford Motor Co. , 112 N.J.L. 597, 603, 172 A. 379 (1934) ). The debtor has alleged no prejudice due to the lack of notice. The equity she seeks here is only for her to further delay HSBC.
Moreover, the rights of a third party, the LLC, has intervened, see Samojeden , at 128-29, 518 A.2d 525, complicating any relief, even if merited. The debtor wants her cake and to eat it too-vacate the sale but let her redeem the property at the $ 143,000 the LLC paid rather than the redemption amount she owed. That is not equity.
The court also notes that, unlike the complaining parties in Samojeden , who reasonably believed no sale would be scheduled while the borrower continued to make monthly payments, Samojeden , at 127, 518 A.2d 525, the debtor here had no basis to believe that HSBC would not seek to reschedule the sale once her prior bankruptcy case was dismissed. Emigrant Mortgage Co. , 2018 WL 2450556, at *2 (where borrowers did not receive notice of an adjourned sale, "[t]he [lower] court further noted that defendants were effectively on notice that the sheriff's sale would be rescheduled after the bankruptcy court dismissed their petition."). Accordingly, the debtor has not adequately alleged any fraud, accident, surprise, mistake or irregularities in the conduct of the sale warranting judicial interference.
As the debtor failed to state a claim upon which relief can be granted, the court grants HSBC's motion to dismiss the amended complaint.
The court reserves the right to revise its findings of fact and conclusions of law.

This adversary proceeding is assigned to the docket of the Hon. Rosemary Gambardella. For the time being, the proceeding is being handled by the undersigned for disposition.

At oral argument, counsel agreed that the court will construe HSBC's "Supplemental Brief in Support" of its initial Motion to Dismiss the original complaint (Doc. No. 9) as a Motion to Dismiss the Amended Complaint. Counsel also agreed that the court would not convert the motion to a Motion for Summary Judgment. See Fed. R. Civ. P. 12(d). Accordingly, the court will not consider any of the information presented in the exhibits to the Motion to Dismiss.

Though considering its conclusion, the court need not reach this request, to the extent that the debtor seeks to cram down HSBC's judgment lien, she has not averred facts to support such relief, merely arguing without citation that, because HSBC accepted $ 143,000 from the LLC, it should have to accept the same amount from her. There is no support for this proposition in law or equity. If the court vacated the sale, it would merely put the parties back in their positions prior to the sale, i.e., the debtor owing HSBC the $ 261,933 provided for under the judgment.

HSBC also discusses preference under section 547, but the debtor did not allege a preference in either her original or amended complaint.

HSBC also cited Federal Rule of Civil Procedure 12(b)(1), (3). Prior to the amendment to the complaint, the court addressed whether it had subject matter jurisdiction and whether the state court was the proper venue for this dispute and determined that it would not abstain. Thus, it need not consider these grounds for dismissal now.

The debtor's adversary complaint alleging 11 U.S.C. § 548 was timely, as a party may object to a sale within "ten days after the sale or at any time thereafter before delivery of the conveyance." In re Ryker , 301 B.R. 156, 164 (D.N.J. 2003) (citing Rule 4:65-5, emphasis added). But her 10-day right to redeem under state law, which is not included in Rule 4:65-5, did not similarly extend to any time before delivery of the deed. As explained by the court in In re Ryker :
New Jersey does not have a statutorily created right to redemption; however, in Hardyston [Nat. Bank v. Tartamella , 56 N.J. 508, 267 A.2d 495 (1970) ], the New Jersey Supreme Court held that a mortgagor could exercise a right to redemption within the ten day period fixed by R. 4:65-5 for objections to sale and until an order confirming the sale if objections were filed under the rule. See id. at 512, 267 A.2d 495 (noting that since under court rules confirmation of sale is automatic by the passage of ten days without an objection filed, the mortgagor's absolute right to redemption terminates after ten days). The Hardyston Court exercised its equitable power to create a right of redemption, and as creator of that right, defined the relevant contours, including the time period in which that right must be exercised.
In re Ryker , 301 B.R. 156, 163 (D.N.J. 2003). See In re Connors , 497 F.3d 314, 321-22 (3d Cir. 2007) (holding that the 10-day equity of redemption under state law begins to run on the fall of the gavel, not on the later transfer of the deed).

The debtor alleges in her Amended Complaint that, had she known of the adjourned sheriff's sale, she would have filed bankruptcy to prevent it from going forward. She also alleges that she was prepared before, at and after the sale to obtain a satisfaction of the mortgage. Her statement that she was prepared to satisfy the mortgage prior to the sale conflicts with her assertion that she would have filed bankruptcy to prevent the sale. Why would she need to stop the sale if she could have paid the judgment? In addition, when asked at the hearing on the motion, her counsel could not explain how the debtor was prepared to satisfy the mortgage. Taking the debtor's allegations in the Amended Complaint in the light most favorable to her but also taking into consideration her stating in opposition to the Motion to Dismiss that she only intended to filed chapter 11, her filing of bankruptcy as soon as she realized the sale had gone forward and, as her counsel conceded at the hearing, her prior bankruptcy filing, the court finds that the debtor had no ability to pay the mortgagee in full at the time of the adjourned sale.